## A04A0197. WOODS v. THE STATE.
(596 SE2d 203)

BLACKBURN, Presiding Judge.

Following a jury trial, Corey Ronsha Woods appeals his conviction on three counts of false imprisonment[1] and one count of armed robbery,[2] contending that the evidence was insufficient to support the verdict. For the reasons set forth below, we affirm.

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia.*[3] Conflicts in the testimony of the witnesses, including the State's witnesses, (are) a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

*Arnold v. State.*[4]

Viewed in this light, the record shows that on the night of June 21, 2001, two men hid in the back warehouse area of a Piggly Wiggly grocery store on Mableton Parkway. The robbers knew where to find items in the store's backroom. Both men were armed with pistols and wore ski masks. The robbery occurred on a Wednesday night, when no security guard was on duty at the store. Shortly after the store closed for the evening, the men captured and bound the store's employees with tape. The two men beat the store manager, Mitchel Vallejas, and forced him to open a loading dock door. The loading dock door did not have an alarm; the robbers ignored a nearby door which had an

---

[1] OCGA § 16-5-41.
[2] OCGA § 16-8-41.
[3] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[4] *Arnold v. State,* 260 Ga. App. 287, 288 (581 SE2d 601) (2003).

alarm. A beige Mercury Marquis automobile was parked outside. The men forced Vallejas to give them the combination to the store's safe, took his keys, left him in a back office, and went to the front of the store.

Upon arriving at the front of the store, the two men subdued another store employee, Elaine Dowdy, who was in a front office preparing the night's deposit. The men took the deposit money as well as the money in several cash register drawers which were stored in the front office. The men then forced Dowdy to attempt to open the safe. When Dowdy was unable to open the safe, one of the men placed her outside the office area and bound her with tape. The men then brought Vallejas to the front office and forced him to open the safe. The men took the money in the safe, including several boxes of coins. One of the robbers wished Vallejas, who had resigned his position at the Piggly Wiggly, good luck in his new job.

The police were informed of the robbery while it was in progress by Linda Winston, whose son worked at the store. While waiting in the parking lot to give her son a ride home after he finished work, Ms. Winston had observed a masked gunman bring the store manager, Vallejas, from the back room to the front office. Ms. Winston drove to a nearby service station and telephoned the police. A short time later, two police cars arrived and the officers discovered the beige Mercury in the back of the store. The officers observed two masked men run from the store loading dock into a wooded area behind the store. One of the officers chased the two men. The other officer remained in the area behind the store. Upon hearing a thud, that officer searched the loading dock area and discovered Woods attempting to hide in a trash dumpster. Woods' face was partially covered by a bandanna which was tied around his head. The police arrested Woods and impounded the beige Mercury, which belonged to Woods' parents. A search of the car yielded the stolen money, the store manager's keys, and a loaded pistol.

Woods contends that the evidence was insufficient to support the jury's verdict. Woods first argues that the evidence revealed only his presence at the crime scene because none of the store employees identified Woods and there was no evidence linking him to the beige Mercury. We do not agree.

The evidence at trial showed that Woods had been employed by the Piggly Wiggly and had been fired the weekend before the robbery. The evidence also showed that Woods was in the store on the night of the robbery. Dowdy testified that she recognized one of the robbers' voices as belonging to Woods. There was sufficient direct evidence to

support the jury verdict. See *Jackson v. State*[5] (victim's identification of robber's voice as belonging to defendant sufficient to support conviction).

Woods also argues that all the evidence against him was circumstantial, and that this evidence was insufficient to support his conviction because it did not exclude every other reasonable hypothesis except his guilt as required by OCGA § 24-4-6. Since there was direct testimony of Woods' guilt, corroborated by circumstantial evidence, the rule requiring exclusion of every other reasonable hypothesis does not apply. *Gresham v. State*;[6] *Smith v. State*.[7]

Even if the jury discounted the testimony of Dowdy, there was sufficient circumstantial evidence to support the verdict. The robbers exhibited inside knowledge of the store's procedures and personnel that only a person who had worked at the store would have. Woods had been fired from his job at the Piggly Wiggly the week before the robbery. The beige Mercury belonging to Woods' parents was found behind the store with the proceeds of the robbery and a loaded pistol inside. Woods was found hiding behind the store in a trash dumpster, wearing a bandanna covering the lower portion of his face.

If the jury did not believe that Woods was one of the two robbers in the store, the evidence was sufficient to authorize the jury to find Woods guilty as a party to the crime. See OCGA § 16-2-20;[8] *Mack v. State*[9] (defendant who acted as lookout for robbery could be convicted as party to the crime); *Hemphill v. State*[10] (defendant who knowingly drove accomplices to robbery could be convicted as party to the crime); *Short v. State*[11] (defendant who helped plan robbery could be convicted as party to the crime).

*Judgment affirmed. Barnes and Mikell, JJ., concur.*

---

[5] *Jackson v. State*, 259 Ga. App. 727, 729 (1) (578 SE2d 298) (2003).

[6] *Gresham v. State*, 246 Ga. App. 705, 707 (2) (541 SE2d 679) (2000).

[7] *Smith v. State*, 236 Ga. App. 122, 123 (1) (511 SE2d 223) (1999).

[8] OCGA § 16-2-20 states:
 (a) Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime. (b) A person is concerned in the commission of a crime only if he: (1) Directly commits the crime; (2) Intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity; (3) Intentionally aids or abets in the commission of the crime; or (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime.

[9] *Mack v. State*, 263 Ga. App. 186, 188 (2) (587 SE2d 132) (2003).

[10] *Hemphill v. State*, 242 Ga. App. 751, 752 (1) (531 SE2d 150) (2000).

[11] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

DECIDED MARCH 3, 2004.

*Jason R. Hasty*, for appellant.
*Patrick H. Head*, District Attorney, *Henry R. Thompson, Amelia G. Pray*, Assistant District Attorneys, for appellee.