## A11A1921. IN THE INTEREST OF I. M. W., a child.
### (722 SE2d 586)

ADAMS, Judge.

Following a bench trial, this 13-year-old juvenile was adjudicated delinquent for a violation of OCGA § 16-11-38, which prohibits wearing a mask, hood, or other device that conceals the identity of the wearer, and a violation of OCGA § 16-11-36, for loitering or prowling. On appeal, he contends the juvenile court should have granted his motion to dismiss, that the court erred by allowing the testimony of two of the witnesses, and that the evidence was insufficient to support the adjudication on each count.

Construed in favor of the adjudication, the evidence shows that on December 4, 2010, Cassie Morrow was in her home in Watkins-

ville when her doorbell rang. When she answered the door two male youth were there; one was wearing a black ski mask, and the other was wearing a hooded sweatshirt and had his hands in his pockets fiddling for something. Morrow was worried that the second youth had a gun. The youth in the mask put his hands up to his face and stood staring at Morrow. Morrow, who was pregnant, was scared. Morrow's daughter started screaming, and her fiancé shut the door and locked it. The doorbell then rang 15 more times, after which the boys ran off. Morrow's fiancé then ran outside.

An officer who received a call, arrived promptly and saw Morrow's fiancé running after one of the young men. He pursued down a nearby road. He made contact with both boys, who did not run from him; one was wearing a black ski mask, and the second was wearing a gray sweater. The officer could not identify the masked boy when he had the mask on. The officer told the boy in the mask to remove it, and the boy, who was smiling at the time, complied. The officer testified that I. M. W. gave his name when asked and said that he thought he was doing something funny. The second boy was not charged with a crime. The two boys were taken to their homes; I. M. W. lives in the neighborhood where the incident occurred. The officer identified I. M. W. in court as the boy who removed the mask.

I. M. W. testified and admitted that he put on a mask and, with his friend, went to the Morrows' house and rang the doorbell. He admitted someone opened the door, that a man came to the door and closed it, that he did not have the opportunity to talk, that he and his friend rang the doorbell again, and that when they left, the police arrived. He testified that he and his friend had intended to go to another friend's house to surprise him and "play games," but that they accidentally went one or two houses away from his friend's house. I. M. W. admitted at trial that he did not tell the officer about how they intended to go to a different house.

1. The evidence was sufficient to establish violations of both crimes.

> [W]hen a juvenile challenges the sufficiency of the evidence, we apply the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and we consider whether the evidence adduced at the hearing would permit a rational trier of fact to conclude beyond a reasonable doubt that the juvenile committed the acts with which he is charged. In considering the sufficiency of the evidence, we view the evidence in the light most favorable to the adjudication below, keeping in mind that it is for the trier of fact, not this Court, to weigh this evidence, resolve any conflicts in the evidence, and assess the credibility of witnesses.

(Citations and punctuation omitted.) *In the Interest of H. A.*, 311 Ga. App. 660, 661 (716 SE2d 768) (2011).

(a) OCGA § 16-11-38 (a) provides that, with certain enumerated exceptions that are not applicable here:

> A person is guilty of a misdemeanor when he wears a mask, hood, or device by which any portion of the face is so hidden, concealed, or covered as to conceal the identity of the wearer and is upon any public way or public property or upon the private property of another without the written permission of the owner or occupier of the property to do so.

Our Supreme Court has explained that the statute includes a mens rea requirement: "either 'intention or criminal negligence' must be present." *Daniels v. State*, 264 Ga. 460, 464 (2) (b) (448 SE2d 185) (1994). That Court restated the requirements for obtaining a conviction under the Anti-Mask Act to include the mens rea requirement:

> [T]he state must show that the mask-wearer (1) intended to conceal his identity, and (2) either intended to threaten, intimidate, or provoke the apprehension of violence, or acted with reckless disregard for the consequences of his conduct or a heedless indifference to the rights and safety of others, with reasonable foresight that injury would probably result.

Id. "While the reaction of the mask-wearer's audience may be some evidence of the mask-wearer's state of mind, such evidence is not necessarily determinative." Id. at 463 (2) (a).

Here, the appellant in a mask and his friend in a hooded sweatshirt stood at the door to a stranger's house and frightened the occupants by standing motionless and silent as to their intentions. After the occupants closed the door, the youths rang the doorbell numerous times. Further, the appellant's defense is that there was a mistake, but he did not react on the scene as if there had been a mistake. He did not remove the mask or otherwise try to explain to the household occupants that a mistake had been made or that they did not mean to frighten them. In fact, the appellant did not tell the officer that they had approached the wrong house by mistake. The appellant's statement to the officer that he thought he was doing something funny, without an explanation that there was a mistake about the house, could be seen as an admission that he was trying to scare strangers. Finally, the judge was authorized to disbelieve the appellant's version of events. See *Franklin v. State*, 258 Ga. App. 281,

282 (574 SE2d 361) (2002).

Under these facts, we conclude there was sufficient evidence to permit a rational trier of fact to conclude beyond a reasonable doubt that the appellant intended to conceal his identity and to threaten, intimidate, or provoke the apprehension of violence.

(b) OCGA § 16-11-36 (a) provides as follows:

> A person commits the offense of loitering or prowling when he is in a place at a time or in a manner not usual for law-abiding individuals under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.

The evidence supports the conclusion that because the appellant was wearing a mask, he was at the Morrows' door "in a manner not usual for law-abiding individuals." Further, the circumstances and the appellant's actions, together with his friend's, support the conclusion that a justifiable and reasonable alarm or immediate concern for the safety of the Morrows was warranted. And, as shown above, the appellant's explanation to the officer could be read as an admission of intending to scare the Morrows. The fact that the appellant "did not attempt to flee from [the officer], did not refuse to identify himself, or did not attempt to conceal himself [from the officer]," standing alone, does not mean that the evidence was insufficient to support a finding of prowling or loitering. *In the Interest of R. F.*, 279 Ga. App. 708, 711 (2) (a) (632 SE2d 452) (2006). The evidence was sufficient to support the juvenile court's decision.

2. The appellant contends the trial court erred by denying his motion to dismiss because the State failed to comply with the strict requirements of OCGA § 15-11-39 (a).[1] That Code section establishes the applicable timing: for children who are not in detention, like I. M. W., the statute provides that "the court shall set a hearing thereon which shall be not later than 60 days from the date of the filing of the petition." OCGA § 15-11-39 (a).

The petition against I. M. W. was filed on December 16, 2010; 60 days from that day would land on February 14, 2011. The case was scheduled for arraignment on January 12, 2011. Because of a snow storm, the arraignment was continued to February 1. On the day of the arraignment, at which the appellant pled not guilty, the appellant served discovery requests on the State. On February 8; the appellant was served with a summons to appear at a hearing to be held on February 23, 2011. On February 18, 2011, the appellant filed a

---

[1] In 2000, the statute was modified and renumbered from OCGA § 15-11-26.

motion to dismiss for failure to comply with the 60-day provision. On February 23, the hearing commenced with an argument on the motion to dismiss, which was denied. Thereafter, the State admitted that it had not complied with the appellant's discovery request, and for that reason, the appellant requested a continuance of the adjudicatory hearing. The adjudicatory hearing ultimately was held on March 23, 2011.

Thus the adjudicatory hearing was neither set for nor held within 60 days of the date of the petition. "The language of OCGA § 15-11-39 (a) is mandatory and the adjudicatory hearing must be set for a time not later than that prescribed by the statute." (Punctuation and footnote omitted.) *In the Interest of A. S.*, 293 Ga. App. 710, 711 (1) (667 SE2d 701) (2008). Nevertheless, the requirements of OCGA § 15-11-39 (a) "can be waived, or continued for the securing of legal representation, OCGA § 15-11-30 (b), or for reasons within the discretion of the juvenile court." (Citations omitted.) *In the Interest of R. D. F.*, 266 Ga. 294, 295 (1) (466 SE2d 572) (1996).

During the argument regarding the motion to dismiss, the appellant's mother — his representative and apparently an attorney — acknowledged that she did not object when, at the arraignment hearing, it was announced that the adjudicatory hearing would be set for February 23, outside of the 60-day window. She also did not object within the statutorily prescribed 60-day time period; the motion to dismiss was filed outside of the 60-day requirement. This Court has held that under similar procedural facts, the juvenile court did not err in denying the appellant's motion to dismiss for failure to comply with OCGA § 15-11-39 (a). *In the Interest of A. T.*, 302 Ga. App. 713, 714 (1) (691 SE2d 642) (2010) (at arraignment, appellant did not object to hearing date set beyond required time and did not object within the same time frame).

3. The appellant contends the juvenile court erred by allowing the testimony of two witnesses for the State.

(a) The State called Steve Hollis as its first witness, and the appellant objected on the ground that he "was not present on the day of the incident" and that he had no knowledge of the events charged in the indictment, which pertained to the boys "entering" the property wearing a mask. The court reserved ruling on the objection until hearing the witness's testimony.

Hollis testified that he lived on the same street where the incident occurred; that on the day of the incident after lunchtime, he received a call, left his residence, went down the street in his car, and saw a boy in a mask and another boy coming away from the front door of a house, with the occupants chasing and yelling at them. The police arrived immediately thereafter and told the boy to take off the mask. Hollis identified the appellant as the boy who took off the

mask. Hollis heard the boys say that "they were having fun." He testified that as a result of the incident he was "angry, disturbed, concerned for young men who obviously don't understand the consequences of their behaviors," and concerned for his personal and family's safety and for the safety of his property. He admitted that he did not see what happened when the boys entered the Morrow property and went to the door.

Obviously, the witness was present on the day of the incident; and he saw the boys in the victims' yard, saw the appellant take off the mask, and heard the boys' statement to the police. The evidence was relevant for identifying the appellant as the person in the mask and showing the boys' behavior as they left the Morrow property, which may have shed some light on the boys' intent. We find no breach of the trial court's discretion regarding admitting relevant evidence. See *Johnson v. State*, 289 Ga. 498, 502 (5) (713 SE2d 376) (2011) (standard of review is abuse of discretion).

The appellant also argues that the State used the witness to establish prior acts of mischief in the neighborhood, which was "for the sole purpose of instilling bias and prejudice and fueling improper speculation by the court." When Hollis testified that "we had been having issues with someone ringing doorbells, throwing items at houses," the appellant objected on the ground that such information was irrelevant and prejudicial. But OCGA § 16-11-36 itself is concerned with the "circumstances" under which the crime was committed. And "[d]uring a nonjury trial, it is presumed that the court is able to 'sift the wheat from the chaff and select only the legal evidence.' [Cit.]" *In the Interest of C. G. B.*, 242 Ga. App. 705, 711 (4) (531 SE2d 107) (2000). We find no error in allowing Hollis's testimony.

(b) Finally, the appellant contends the juvenile court erred by allowing Morrow's fiancé, Kenneth Kanca, to testify as a rebuttal witness. Whether to allow an unidentified rebuttal witness to testify is a decision within the trial court's discretion. *Thompson v. State*, 237 Ga. App. 91, 93 (2) (514 SE2d 870) (1999).

In his own defense, the appellant testified that Morrow's door was only open for one second; that he did not have time to speak while the door was open; and that they only rang the bell one more time after the door was closed. After the defense rested, the State called Kanca in rebuttal. The appellant objected on the ground that he was not on the witness list; indeed, the State concedes that it had not disclosed Kanca as a potential witness. Among other things, Kanca testified that the door was open for two or three minutes; that he asked the boys what they wanted; and that the boys just stood there "and stared at me in the mask." The State elicited very little additional information from Kanca. We find no abuse of discretion.

See *Thompson*, 237 Ga. App. at 93 (2). The case of *Allison v. State*, 256 Ga. 851, 853 (8) (353 SE2d 805) (1987), is distinguishable because in that case, the undisclosed witnesses "were an important part of the state's main case, rather than true rebuttal witnesses." Id. at 854 (8).

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED JANUARY 20, 2012

*Ronda E. Hobby*, for appellant.
*Kenneth W. Mauldin, District Attorney, Kristopher M. Bolden, Kristin Moore Waller, Assistant District Attorneys*, for appellee.